**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION**

| | |
|---|---|
| EAST SHORE SOUTH, LLC,<br><br>               Plaintiff,<br><br>    v.<br><br>OCONEE COUNTY, SOUTH CAROLINA,<br><br>               Defendant. | C/A No. _____<br><br>**COMPLAINT FOR DAMAGES,<br>DECLARATORY JUDGMENT<br>AND INJUNCTIVE RELIEF** |

Plaintiff East Shore South, LLC ("ESS"), by counsel, complaining of the Defendant Oconee County, alleges as follows:

1.      Plaintiff East Shore South, LLC is a limited liability company. At all times relevant to this action, Plaintiff is and has been the owner of a substantial tract of land in the Newry Mill community in Oconee County, South Carolina, consisting of more than 600 acres zoned as a Control Free District, meaning it is in an unzoned area.

2.      Defendant Oconee County ("County") is a political subdivision created under South Carolina law.

3.      This action concerns the Plaintiff's rights to utilize and enjoy the profits from its ownership of property which have been taken away by the Defendant County's enactment of an arbitrary and capricious moratorium on constructing new housing in the County. The moratorium not only frustrates the purposes of applicable federal laws, but it is also discriminatory having a disparate impact on protected classes, including veterans, low-income populations, and seniors in Oconee County.

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution and laws of the United States, including the Fair Housing Act, 42 U.S.C. § 3604, 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, and the Commerce Clause, U.S. Const. art. I, § 8, cl. 3.

5.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, including the enactment and enforcement of the challenged ordinance by Defendant Oconee County in Oconee County, South Carolina.

**FACTS**

6.     Plaintiff owns more than 600 acres of land in the Newry Mill community in an unzoned area ("Control Free District") of Oconee County.

7.     Plaintiff intends to develop the property as a Planned Development District known as "Mill Hill." Plaintiff submitted a zoning application for the Mill Hill Project ("Project or Mill Hill Project") to the Oconee County Planning Department.

8.      The Project is consistent with the 2020 Oconee County Comprehensive Plan ("the Plan"). The Executive Summary of the Plan states that:

> The Comprehensive Plan is the County's principle guiding or vision document – designed to formulate a coordinated, long-term planning program to maintain and enhance the managed growth and viability of the County.  The Plan lays out the desired future for the County and relates how that future is to be achieved.  It serves as a resource to both the public and private sector by projecting how land will develop, housing needs met, training developed to attract businesses with well compensated jobs, how recreational interests are developed while protecting the environment, and how public services and facilities will be provided and improved.

2

The Plan also states that it is designed to:

- Encourage housing development that will allow residents to "age-in-place" such as higher density, multi-family, assisted living and nursing facilities.

- Develop housing options that are affordable for low and middle-income families.

- Development of a range of housing types to include single-family, multi-family developments and manufactured homes.

- Enhance access to affordable housing through both public and private cooperation.

- Encourage affordable housing development in Opportunity Zones identified in Oconee County.

- Promote and encourage development within defined Opportunity Zones featuring either mixed use or affordable housing elements.

- Seek resources, plan for, and implement the innovative development and redevelopment of unincorporated areas such as Fair Play, Oakway, Newry and Utica.

The Plan outlines future land use in Oconee County. The Mill Hill Project is in the area designated "Suburban Transitional." The Plan states "Suburban Transitional identifies areas of densest development. These areas are well served by infrastructure and are suitable for continued development. New uses may vary in nature and intensity, but should not negatively impact existing land uses." This is important because the Plan was written to encourage development of denser housing in areas of the County so designated.

9. In reliance on the Plan and the fact that the Mill Hill Property is in an unzoned area designated for exactly this type of development, Plaintiff incurred substantial development costs in connection with the planned development of this property.

3

10.     The Mill Hill Project is also located in an area designed as a 'textile mill site' under the South Carolina Textiles Communities Revitalization Act (S.C. Code Ann. § 12-65-10 *et seq.*) ["Textiles Communities Revitalization Act"]. The stated policy goal of the Textiles Communities Revitalization Act is to spur investment and development in economically distressed areas which were previously used in the textile industry.

11.     Specifically, the South Carolina Textiles Communities Revitalization Act provides as its purposes the following public policy and economic goals:

- The primary purpose of this chapter is to create an incentive for the rehabilitation, renovation, and redevelopment of abandoned textile mill sites located in South Carolina.

- A public and corporate purpose is served by restoring these textile mill sites to a productive asset for the communities and result in increased job opportunities.

- As a result of the existence of these abandoned mills, there is an excessive and disproportionate expenditure of public funds, inadequate public and private investment, unmarketability of property, growth in delinquencies and crime in the areas, together with an abnormal exodus of families and businesses, so that the decline of these areas impairs the value of private investments, threatens the sound growth and the tax base of taxing districts in these areas, and threatens the health, safety, morals, and welfare of the public. To remove and alleviate these adverse conditions, it is necessary to encourage private investment and restore and enhance the tax base of the taxing districts in the areas by the redevelopment of these abandoned textile mill sites.

S.C. Code Ann. § 12-65-10 (A-C).

12.     Defendant has issued a binding Certification of Site under S.C. Code Ann. § 12-65-60 that the Mill Hill Property is entitled to the economic and tax benefits of the Textiles

Communities Revitalization Act. The Certification was provided by a *unanimous* vote of Defendant's County Council. *See* County of Oconee Resolution 2021-13.

13.     By granting the Certification of Site, Defendant found that the Mill Hill Property "is located in a distressed area" of Oconee which is the abandoned site of the former Newry Mill.

14.     Pursuant to S.C. Code Ann. § 12-65-60, a party that obtains a Certification of Site "may conclusively rely upon the certification" to avail itself of the benefits guaranteed by the Textiles Communities Revitalization Act.

15.     The Mill Hill Project is also located within a designated South Carolina Opportunity Zone (where according to the plan development is to be promoted and encouraged) and a Textile Tax Credits Zone. As such, Plaintiff's planned development is intended to bring economic growth, commercial development, affordable housing, and increased tax base to Oconee County.

16.     Defendant, by its County Council, sought to ram through a housing moratorium. With little public notice, on or about May 5, 2026, Defendant held the first reading of Ordinance 2026-15, which proposed a moratorium on new construction or development of planned subdivisions seeking to establish more than 10 residential dwelling units in unincorporated Oconee County.

17.     On May 7, 2026, Defendant held the second reading of Ordinance 2026-15 and on May 19, 2026, Defendant held the third reading and public hearing for Ordinance 2026-15. Several citizens appeared at the public hearing and voiced concerns and opposition to the Ordinance. Yet, the moratorium passed on motion, with no discussion among the councilmen present.

5

18.     Ordinance 2026-15 ("the Moratorium") imposes a temporary moratorium on all activities by Oconee County, including acceptance, review, processing, and granting of applications for approvals, permits, or permissions related to the development or construction of residential subdivisions of more than ten lots and any residential living unit projects, including townhomes, apartments, duplexes, or any other multi-unit development, in unincorporated Oconee County.

19.     The Moratorium applies to all new applications for such developments received after the first reading of the ordinance.

20.     Applications for permits "of sufficient form and content", as determined by County staff, received prior to the first reading may be reviewed and processed.

21.     The Moratorium is set to remain in effect for eight months from the date of the third reading, unless extended by further action of Defendant.

22.     Defendant stated that the purpose of the Moratorium is to allow time to review and amend the development provisions of the Oconee County Code of Ordinances. Defendant cited significant residential growth in unincorporated areas as producing a "strain" on infrastructure. Defendant stated that an eight-month period is the minimum reasonable time needed to complete the review and amendment project.

23.     The Oconee County Planning Commission did not consider or support a Moratorium in its 2026 agendas or meeting minutes. And, upon information and belief, the Planning Commission had completed revisions to Chapters 26 and 32 of the County Code and sent them to Defendant on March 2, 2026. Accordingly, the stated purpose of the Moratorium to allow

time to review and amend the development code appears to be pretextual. It appears that work had already been done.

24.     Plaintiff's Mill Hill Project is located within a federally designated Opportunity Zone. The Opportunity Zone program provides federal tax incentives for taxpayers who reinvest realized capital gains into Qualified Opportunity Funds, which invest in designated Opportunity Zones.

25.     Investors in Opportunity Zones must reinvest capital gains into a Qualified Opportunity Fund within 180 days of realizing the gain.

26.     The Moratorium halts all residential subdivisions of ten or more units and multi-unit developments, including those in Opportunity Zones. Because the Moratorium applies to all residential living unit projects, including a broad catch-all for "any residential living unit projects," an eight-month moratorium would prevent timely investment in Opportunity Zone projects and will cause investors to withdraw from such projects.

27.     Opportunity Zones in Oconee County were designated because they represent low-income communities with a median family income below 80% of the state or metropolitan median area income or a poverty rate of at least 20%. There is a correlation between high-poverty census tracts in Oconee County and protected classes under the Fair Housing Act. Protected classes are statistically and disproportionately reliant upon multi-family, entry-level, workforce, and retiree housing within Oconee County.

28.     The Moratorium freezes the development of multi-family residential projects within Opportunity Zones, reducing the supply of multi-family, entry-level, workforce, and retiree

7

housing. The Moratorium will halt capital investments intended for Opportunity Zones and Textile Tax Credits under the Textiles Communities Revitalization Act and disproportionately deny housing opportunities to protected classes.

29. Defendant did not conduct an economic impact analysis regarding the effects of multi-unit development or the Moratorium.

30. Defendant did not assess potential legal exposure, impacts on the tax base, or compatibility with the county's comprehensive plan in connection with the Moratorium.

31. There is no evidence that Defendant considered less restrictive alternatives to the Moratorium, such as exempting workforce or affordable housing or excluding Opportunity Zones.

32. Plaintiff's Project is intended to provide affordable housing for workers and new families in Oconee County. It is intended to bring significant economic growth and increase the tax base in Oconee County.

33. Plaintiff's Project is located in an area that Defendant actively promoted as an Opportunity Zone and determined to be eligible for Textile Tax Credits with the collective goal to attract private capital commitments. The Moratorium will cause significant economic damage to Plaintiff who relied upon promoted economic incentives to invest significant capital to purchase and begin development of the Mill Hill Property and impair the Newry Mill community.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### (Declaratory Judgment)

34.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

35.    The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)).

36.    Under the Declaratory Judgment Act, a party may seek relief from the enforcement of an unconstitutional statute. Moreover, a claim seeking a declaration that a statute is unconstitutional under the Declaratory Judgment Act is independent and distinct from other claims challenging the constitutionality of state action, such as a claim for a constitutional deprivation.

37.    An actual controversy exists between Plaintiff and Defendant regarding the validity and enforceability of Ordinance 2026-15, including whether the moratorium is authorized by law, is unconstitutionally vague or overbroad, and whether it violates Plaintiff's statutory and constitutional rights.

38.    Plaintiff is entitled to a declaration of its rights and Defendant's obligations under federal law and the United States Constitution that the enforcement of the Ordinance is unconstitutional and violates federal statutory law.

39.    The declaratory relief requested by Plaintiffs is authorized by 28 U.S.C. §§ 2201-2202.

**SECOND CLAIM**
**(Injunctive Relief)**

40.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

41.    The legal purpose of an injunction is twofold. First, an injunction serves to protect the status quo pending the outcome of litigation. Second, and most importantly, an injunction prevents irreparable harm to the Plaintiff while its legal rights are considered. *Powell v. Immanuel Baptist Church,* 261 S.C. 219, 221, 199 S.E.2d 60, 61 (1973).

42.    Plaintiff will suffer irreparable harm if Defendant is not enjoined from enforcing Ordinance 2026-15, because the Moratorium will cause significant economic damage, impair Plaintiff's property rights, and interfere with federal Opportunity Zone investments, which are waived if not pursued within the prescribed timeframe.

43.    Plaintiff can demonstrate the likelihood of success on the merits on multiple theories as asserted herein, including at least one reported South Carolina case which struck down a residential development moratorium. *See Simpkins v. City of Gaffney*, 315 S.C. 26, 431 S.E.2d 592 (1993); *see also Scott v. Greenville Cty.*, 716 F.2d 1409, 1419, n. 10 (4th Cir. 1983) (Upholding a developer's right to bring legal action based on a residential development moratorium which disproportionally impacted his ability to build multi-family dwellings).

44.    Plaintiff lacks an adequate remedy at law.

45.    By reason of the foregoing, Plaintiff seeks preliminary and permanent injunctive relief prohibiting Defendant from enforcing Ordinance 2026-15.

10

**THIRD CLAIM**
**(Violation of the Fair Housing Act – Disparate Impact (42 U.S.C. § 3604(a), 42 U.S.C. § 3617)**

46.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

47.     Congress enacted the Fair Housing Act ("FHA") to ensure that certain protected classes, including veterans, minorities, and seniors, are not victimized by discrimination relating to housing. 42 U.S.C. § 3601.

48.     To further this objective, the Act makes it unlawful to "interfere" with a party – such as a developer – who has "aided or encouraged" protected classes to enjoy their statutory "right" to housing by seeking to develop workforce housing. *See* 42 U.S.C. § 3617.

49.     A government subdivision, such as Oconee County, may violate the FHA by engaging in conduct which results in disparate treatment of a protected class *or* results in disparate impact on a protected class.

50.     To violate the FHA, it is not necessary for a government body to intentionally exclude minorities from housing opportunities, or to be motivated by racial animus in its land use and zoning decisions.

51.     The Supreme Court of the United States has established a three-part, burden shifting test to demonstrate a violation of the FHA on the basis of disparate impact. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 192 L. Ed. 2d 514 (2015)

52.     Under the First factor, a "plaintiff must demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on the protected class." *Reyes I*, 903 F.3d at 424 (citing *Inclusive Cmtys.*, 576 U.S. at 542).

11

53.    The Second factor shifts the burden to a Defendant who bears "the burden of persuasion to 'state and explain the valid interest served by their policies." *Id.* (quoting *Inclusive Cmtys.*, 576 U.S. at 541)

54.    The Third and final factor requires the Plaintiff to "prove that the defendant's asserted interests 'could be served by another practice that has a less discriminatory effect.'" effect.'" *Id.* (quoting *Inclusive Cmtys.*, 576 U.S. at 527).

55.    The Moratorium Defendant enacted and seeks to enforce a facially neutral policy that imposes a moratorium on residential developments of more than ten units and multi-unit projects, including those in federally designated Opportunity Zones.

56.    However, this policy violates the FHA because it has a disproportionate adverse effect on protected classes, including veterans, low-income populations, and seniors, who are statistically more reliant on multi-family, entry-level, workforce, and retiree housing in the affected areas. As such, Plaintiff can show under the First Prong of the Inclusive Communities test that there is a robust causal link between the Moratorium and the resulting disparity in housing opportunities for one more or protected classes.

57.    Defendant cannot satisfy its burden under the Second Prong to demonstrate that the Moratorium is necessary to achieve a substantial, legitimate, nondiscriminatory interest, nor that less discriminatory alternatives were considered or implemented. The interests offered by Defendant are limited to speculative and unsubstantiated concerns about the 'strain on infrastructure' and a review of Defendant's development policies.

58.    Defendant has provided no evidence whatsoever to justify its stated rationale for enacting Ordinance 2026-15, other than its subjective view multi-family developments like the

Mill Hill Project. This is insufficient to satisfy Defendant's burden under Prong Two. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 277 (4th Cir.), *cert. denied,* 145 S. Ct. 172, 220 L. Ed. 2d 29 (2024) (quoting *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 967 (9th Cir. 2021)) (holding that a defendant accused of violating the FHA must demonstrate "that the policy 'serves, in a significant way,' its legitimate interests,").

59.     Lastly, Defendant's stated aims could be achieved by less restrictive means. Such alternatives include but are not limited to exempting affordable multi-family, entry-level, workforce, and retiree housing from the Moratorium or even simply excluding Opportunity Zones from the Moratorium in the first place. However, there is no evidence the Defendant considered any less harmful alternatives.

60.     By reason of the foregoing, Plaintiff seeks preliminary and permanent injunctive relief prohibiting Defendant from enforcing Ordinance 2026-15.

## FOURTH CLAIM
### (Violation of the Fair Housing Act (42 U.S.C. § 3604(b))

61.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

62.     Defendants are further liable under 42 U.S.C. § 3604(b), which makes it unlawful to "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

63.     As set forth herein, Defendant's Moratorium denies or otherwise makes housing unavailable by disproportionately restricting affordable multi-family, entry-level, workforce, and retiree housing opportunities in areas where protected classes reside or seek to reside.

64.     The Moratorium's terms and conditions, including its application to Opportunity Zones, property previously approved by Defendant for the Textile Tax Credit, and lack of exemptions for affordable multi-family, entry-level, workforce, and retiree housing, result in discrimination in the terms, conditions, or privileges of sale or rental of dwellings.

## FIFTH CLAIM
### (42 U.S.C. § 1983)

65.     Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

66.     Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 provides that every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

67.     Section 1983 alone creates no substantive rights; rather, it provides a remedy for deprivations of rights established elsewhere in the Constitution.

68.     To recover in an action under Section 1983, a plaintiff must show: (1) that they suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of

14

the United States; and (2) that the act or omission causing the deprivation was committed by a person acting under the color of law.

69.     Defendant, acting under color of state law, has deprived Plaintiff of rights secured by the United States Constitution and federal law, including the Fair Housing Act, the Fifth and Fourteenth Amendments, Equal Protection, and the Commerce Clause, by enacting and seeking to enforce the Moratorium.

70.     Defendant, as a government subdivision, is a state actor for purposes of a Fourteenth Amendment, § 1983, and Equal Protection claim.

71.     The Fifth and Fourteenth Amendments to the United States Constitution prohibit the government from depriving any person of "life, liberty, or property without due process of law." The Fifth Amendment applies to federal action, and the Fourteenth Amendment applies to state action.

72.     Article I, Section 3 of the South Carolina Constitution provides that no person "shall be deprived of life, liberty, or property without due process of law, nor shall a person be denied the equal protection of the laws."

73.     Both the United States Constitution and South Carolina Constitution recognize substantive due process rights in addition to procedural due process rights.

74.     The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws."

75.     Article I, Section 3 of the South Carolina Constitution provides that no person "shall be deprived of life, liberty, or property without due process of law, nor shall a person be denied the equal protection of the laws."

15

76.     As alleged herein, Defendant's Moratorium results in a disparate impact to protected classes, including veterans, minorities, and seniors, by eliminating the development of *all* residential and multi-development properties for a minimum of eight (8) months, but potentially longer.

77.     Furthermore, Defendant's Moratorium directly contradicts current zoning classifications and permissible uses such as those expressed in Defendant's Plan that were in effect at the time Plaintiff purchased the property and filed its zoning application. *See Niggel v. City of Columbia*, 254 S.C. 19, 23, 173 S.E.2d 136, 137 (1970) (finding a zoning denial by a local government which contradicted current zoning classifications permitting the proposed use was unlawful and violated the landowner's property rights); *see also Pure Oil Div. v. City of Columbia*, 254 S.C. 28, 35, 173 S.E.2d 140, 143 (1970) ("vested rights acquired under a zoning ordinance in effect at the time of the application for a permit will be protected even against a change in the zoning ordinance.")

78.     Plaintiff has a legal right to the issuance of certificate of zoning compliance upon presentation of an application and plans showing a use expressly permitted under the then-current zoning ordinance, which the Mill Hill Project does.

79.     Despite Plaintiff's proposed development fully complying with current zoning classifications at the time of purchase and application for a zoning permit, Defendant subsequently and unreasonably restricted Plaintiff's ability to use the property as provided by law.

80.     Plaintiff therefore holds a cognizable property interest and vested right, both of which are rooted in state law, to which federal due process protection also extends to prevent an unreasonable deprivation of Plaintiff's vested property rights.

16

81.    Defendant's stated rationale for the Moratorium is arbitrary, not reasonably tailored to achieve a rationale government interest, treats similarly situated property owners differently than others, and is entirely subjective without any evidentiary support offered by Defendant to support its overbroad mandate.

82.    Collectively, these actions by Defendant deprive Plaintiff of Equal Protection and due process of law under the Fourteenth Amendment.

83.    Defendant's Moratorium also unduly burdens interstate commerce by interfering with federally incentivized Opportunity Zone investments and State Textile Tax Credits and the flow of capital into Oconee County, thereby frustrating the purposes of both South Carolina and federal law, such as the Textiles Communities Revitalization Act, Tax Cuts and Jobs Act of 2017, the One Big Beautiful Bill Act, Opportunity Zone program, and others created under the Commerce Clause.

84.    Plaintiff has suffered and will continue to suffer injury as a result of Defendant's actions, which collectively violate the Fair Housing Act, the Fifth and Fourteenth Amendments, Equal Protection, and the Commerce Clause, entitling Plaintiff to relief under 42 U.S.C. § 1983.

85.    By reason of the foregoing, Plaintiff seeks preliminary and permanent injunctive relief prohibiting Defendant from enforcing Ordinance 2026-15.

## SIXTH CLAIM
### (Takings Clause – U.S. Constitution)

86.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

17

87.     The Takings Clause of the Fifth Amendment of the United States Constitution prohibits the taking of private property "for public use, without just compensation."

88.     Article I, Section 13(A) of the South Carolina Constitution provides that "private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made for the property."

89.     Both federal and South Carolina regulatory takings claims are analyzed under the "essentially ad-hoc" test laid out in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978); *Braden's Folly, LLC v. City of Folly Beach*, 439 S.C. 171, 886 S.E.2d 674 (2023).

90.     The *Penn Central* test considers three factors:

(1) the economic impact of the regulation on the claimant;

(2) the extent to which the regulation has interfered with distinct investment-backed expectations; and

(3) the character of the governmental action."

*Murr v. Wisconsin*, 137 U.S. 1933, 1943 (2017).

91.     Examining the First *Penn Central* factor, Defendant's Moratorium deprives Plaintiff of all economically viable use of its property, for a minimum timeframe of eight (8) months, but likely longer. Defendant reserved the right to extend the application of the Moratorium based in the sole discretion of Defendant.

92.     Under the Second *Penn Central* factor, Defendant's Moratorium has interfered with Plaintiff's investment-backed expectations which involve the purchase and development of property in the public interest under incentives and programs promulgated by Federal government,

18

including Opportunity Zones and South Carolina, including Textile Tax Credits under the Textiles Communities Revitalization Act. - both of which Defendant has also promoted to encourage development in Oconee County.

93. Defendant's contradictory actions –actively inducing investment by advertising development with State and Federal incentives, then thereafter preventing *any* development using those same programs after Plaintiff purchased qualifying property – are a flagrant violation of Plaintiff's vested rights in its property and the planned Mill Hill Project.

94. Plaintiff's direct reliance upon State and Federal incentives, buttressed by supportive representations made by Defendant, were the basis of Plaintiff's decision to expend considerable resources to purchase the Mill Hill Property and pursue the Mill Hill Project, which is now prohibited by Defendant's Moratorium.

95. Under the Third and final *Penn Central* factor, Defendant's action constitutes the quintessential governmental act – regulation. By passing Ordinance 2026-15, Defendant has haphazardly created an unduly overbroad regulatory framework without a rationale relationship to legitimate governmental interest.

96. Under the Penn Central test, Defenandant's actions by passing Ordinance 2026-15 constitutes a regulatory taking without just compensation in violation of the Fifth Amendment.

97. Plaintiff is entitled to just compensation for the taking of its vested property rights.

## **PRAYER FOR RELIEF**

WHEREFORE, East Shore South, LLC respectfully requests that this Court order the following relief:

A. A declaration that the Ordinance is unconstitutional and violates Federal or State law, or both;

B. A preliminary and permanent injunction prohibiting Defendant from enforcing Ordinance 2026-15;

C. An award of monetary damages representing just compensation for the taking of its property rights;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983, 1988, and 3613(c)(2);

E. For such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

*s/John T. Lay, Jr.*
John T. Lay, Jr. (Fed ID 5539)
Ronald G. Tate (Fed ID 4021)
Dylan R. Glick (Fed ID 13618)
Gallivan, White & Boyd, P.A.
PO Box 7368
Columbia, SC 29202-7368
jlay@gwblawfirm.com
rtate@gwblawfirm.com
dglick@gwblawfirm.com
Phone: (803) 779-1833

***Attorneys for Plaintiff***

Dated: June 10, 2026

20